## Case No. 12,415.

### SAYLES v. CHICAGO & N. W. R. CO.

[3 Biss. 52; 4 Fish. Pat. Cas. 584; 3 Chi. Leg. News, 329.] [1]

Circuit Court. N. D. Illinois. June, 1871.

PATENTS — NONUSER — EQUIVALENTS — COLORABLE ALTERATION—NEGATIVE PROOF.

1. As a general rule the positive testimony· of witnesses as to the existence of prior mechanism must outweigh merely negative proof.

[Cited in Hawes v. Antisdel, Case No. 6,234.]

2. The great utility·of an invention being conceded, the fact that if used at all it was on a single car for some years, seems, unexplained, conclusive evidence against its existence.

3. A man should not be deprived of the results of a successful effort merely because some one else has come near it.

4. If it be asked how often a mechanism shall be used to antedate a patented invention, the answer is, until that which is claimed as new in the patent is complete, although the thing may have been imperfect as an instrument or a machine.

5. If it were manifest that the thing claimed in the patent were accomplished, one prior use would be sufficient to defeat the patent.

[Cited in Allis v. Buckstaff, 13 Fed. 891.]

6. If the construction of the thing itself demonstrates that it was within the principle of the patented invention, then, perhaps. no use of a prior device would be sufficient to destroy the novelty of that which was patented. It might then be said to prove itself.

[Cited in Stitt v. Eastern R. Co., 22 Fed. 651.]

7. In most cases, sufficient prior use must be shown to prove that the mechanism will accomplish what is claimed. and while this is true of a patented device, it is equally true of that by which a patent is sought to be defeated.

8. Inventors of a combination are as much entitled to suppress every other combination of the same ingredients to produce the same results, not substantially different from what they have invented and caused to be patented, as any other class of inventors; and they have a right to invoke the doctrine of equivalents to that extent to sustain their invention.

9. It must always be very much a matter of judgment to the eye, in the examination of two machines, and in observing their mode of operation, whether the one, in the whole, or any of its parts. is a mere colorable or formal alteration of the other.

10. If a patentee has invented a combination of two or more old things so as to produce a new and useful result, then he has the right to treat as infringers all who have used his invention in order to accomplish something more or better, when. without the aid of such invention, it could not be effected.

11. The principle of the Tanner brake. as invented by Bachelder & Thompson, and as patented. is the combination of the two series of brakes, (counting the brakes at each end of

[1] [Reported by Josiah H. Bissell, Esq.. and by Samuel S. Fisher. Esq... and here compiled and reprinted by permission.]

the car as a series,) with each other and with the windlass at each end, so that all the brakes can be applied at once at either end, by the brakeman.

12. Bachelder & Thompson were the first to successfully make this combination.

In equity.

This was a rehearing of the case of Sayles v. Chicago & N. W. R. Co. [Case No. 12,414].

West & Bond and S. D. Cozzens, for complainants.

H. W. Blodgett and B. R. Curtis, for defendants.

DRUMMOND, Circuit Judge. This case was before the court some years since, and an opinion given upon the points then submitted and argued.

The court then decided that Bachelder & Thompson were the inventors, in 1846, of the combination described in their specifications of the brakes of the two trucks with the operative windlasses by the means designated, so that the brakeman, by operating either windlass at the end of a railroad car, could apply the brakes of both trucks simultaneously to the wheels to which the brakes were respectively attached; and that the patent which was issued to Henry Tanner, the assignee of Bachelder & Thompson, in 1852, was valid.

This decision was of course made on the case as then presented, and on the proofs then before the court. The question of infringement was not at that time seriously controverted, and an interlocutory order was made, referring the case to a master. Afterwards an application was made to open this decree because of new evidence discovered affecting the question of novelty of the claim of Bachelder & Thompson, and the court permitted additional proofs to be taken.

The case has been again argued upon the new evidence, and upon the last argument it has been insisted that the defendant does not infringe the Tanner patent, even if valid.

The new evidence relates mainly to two brakes, which, it is alleged, anticipated the discovery of Bachelder & Thompson. 1st. The brake upon the car John Tyler used on the Camden & Amboy Railroad. 2d. The Stanley-Talson brake used on the same road.

In 1843, Mr. Tyler, then president of the United States, made a visit to the Eastern states, and a car was fitted up with unusual effort and expense to carry the president over the Camden & Amboy Railroad, on his way east.

This car was so unique among the cars of the time that it thenceforth bore the name of the president. As a part of its appointments the defense claims that it had a double brake, combining the two trucks, and operating in the same way and producing the same effect as the Tanner brake. If that were so, then undoubtedly it anticipated the invention of Bachelder & Thompson, because it is certain that this special car was constructed, and conveyed the president over the Camden & Amboy Railroad, in 1843. The serious question, therefore, on this part of the case is, when was the double brake put on the John Tyler car?

The evidence is curious on this point. Several witnesses, many of them undoubtedly with full conviction, declare that the car had the double brake on when it started out in 1843, and when the president rode on it. Many others declare that the double brake was not put on the car till 1851, and that it was the Hodge brake, an invention subsequent in time to that of Bachelder & Thompson, now covered by the Tanner patent, and hence generally called the Tanner brake.

It is necessary to determine in the midst of this great conflict of evidence, where the truth is, in the judgment of the court; and looking at all the facts bearing on the point, I think that the witnesses who state that the double brake, combining the two trucks in the manner of the Tanner patent, was on the John Tyler car in 1843, are mistaken, or testify untruly.

It is said that the evidence for the defense in this particular is positive, and on the other side negative; that is so, and if it depended upon that circumstance alone, then it might be the positive testimony would outweigh the negative. But there are various well established facts inconsistent with this positive evidence. It is clear in the examinations which were made among the employés of the Camden & Amboy Railroad, growing out of the suits at Albany, brought by Mr. Tanner against the New York & Erie Railroad Company, and the Hudson River Railroad Company, which were numerous and thorough, that the double brake on the John Tyler car did not assume a tangible shape then, though application was made to some of the witnesses who now assert its existence in 1843. These examinations were made in 1853 and 1854, and seem to have been conducted in entire good faith to ascertain facts to enable the railroads to defend against the Tanner patent. The defense was unsuccessful.

The testimony tending to establish the attachment of a double brake to the John Tyler car in 1851, is of itself in the nature of positive evidence, and therefore is entitled in effect to the consideration of that kind of evidence.

There is one fact established which, unexplained, seems to be conclusive upon this part of the case. The counsel for the defense do not controvert the value or the utility of the Tanner brake. Now, if there was such a brake in substance or effect on the car referred to, then it was not attached to the other cars of the Camden & Amboy Railroad, because the proof appears ample that some years after 1843 the cars of the railroad company were run generally with the single brake alone; and if it were true that a double acting brake of the kind included

in the model of the John Tyler car produced at the hearing, existed in 1843, it is scarcely possible to doubt that it would have gone into general use at once on the road.

In addition to this, many of the witnesses for the defense, who originally spoke with as much confidence as any others, afterwards retracted, and admitted that they were in error when they asserted the double acting brake was on the Camden & Amboy Railroad in 1843.

The testimony shows that in 1842, a man by the name of Stanley made and applied a brake in some respects, at least, similar to that of the Tanner brake.

The materials of which it was composed were too slight, and it proved a failure. Afterwards one Talson strengthened them, and perhaps made some slight changes, and the brake was used on several occasions. It seems afterwards to have been thrown aside. For this different reasons have been given. The position taken that the John Tyler car brake, as claimed, and the Stanley-Talson brake, also as claimed, were continued in use for several years after 1842 and 1843, I consider not sustained by the evidence. There was no successful practical double brake on the Camden & Amboy Railroad in operation prior to the invention of Bachelder & Thompson.

It is the history of inventions that when different persons are exploring or experimenting in the same field, many efforts which ultimately turn out to be failures often come very near success; and when other efforts have proved successful, these last should not be deprived of the results of success simply because others have come near to them. The fact that the Camden & Amboy Railroad was without a successful double acting brake till the Hodge brake was introduced, is strong evidence against the claim set up now both for the brake of the John Tyler car and that of Stanley & Talson. It is asked how often shall a brake be used to antedate the invention of Bachelder & Thompson? The answer is, until that which is claimed as new in the patent is complete, although the thing may have been imperfect as an instrument or a machine. If it were manifest that the thing claimed in the patent was accomplished, one use would be sufficient. If the construction of the thing of itself demonstrated that it was within the principle here stated, then perhaps no use need be established. It might then be said to prove itself. But in most cases sufficient use must be shown to prove it will accomplish what is claimed; and while this is generally true of a patent, it is equally true of that by which a patent is sought to be defeated; otherwise it rests in the region of mere experiment.

The argument that there has been no infringement is this: Brakes had been applied to the trucks of railroad cars; they had been connected together, therefore Bachelder & Thompson could only claim some peculiar method of making the connection. All other methods were left open, and if the connection of the brakes was in a different way from that of Bachelder & Thompson, then there could be no infringement. The defendant's brake—that of Stevens—has a different mode of connecting the two systems of brakes, consequently there is no infringement.

We must bear in mind that the principle of the Tanner brake is the combination of the two series of brakes, counting the brakes at each end of the cars as a series, with each other and with the windlass at each end, so that all the brakes can be applied at once at either end by the brakeman. This combination is produced by means of what is termed a vibrating lever, essentially as specified, and the question is, whether the Stevens brake, that being used by the defendants, accomplishes the same result by analogous means or equivalent combinations within the terms prescribed by the supreme court in the case of McCormick v. Talcott, 20 How. [61 U. S.] 402. The view the court took of the Stevens brake on a former occasion was that it was distinct from the Tanner brake in this: That by some new and original devices Stevens obtained an equality of force upon the brakes, thus retarding the wheels uniformly, Emigh v. Chicago, B. & Q. R. Co. [Case No. 4,448]; and therefore the Stevens patent was sustained. That case went to the supreme court of the United States. There was a difference of opinion in the court on some of the points decided in this court, and the case was never reported, the decree being affirmed by a divided court; but it is understood that the court was unanimous in sustaining the validity of the Stevens patent. The only question, therefore, is whether the Stevens brake, as constructed and operated, embodies, in effect, the invention of Bachelder & Thompson by combining the brake series of the different trucks with the windlasses, so that they can be operated at once from either end of the car. The rule laid down upon the subject of infringement by the supreme court of the United States in the case of Seymour v. Osborne, 11 Wall. [78 U. S.] 516, is that inventors of a combination are as much entitled to suppress every other combination of the same ingredients to produce the same result not substantially different from what they have invented and caused to be patented, as any other class of inventors, and they have a right to invoke the doctrine of equivalents to that extent to sustain their invention.

It must always be very much a matter of judgment to the eye in the examination of two machines and in observing their mode of operation, whether the one, in the whole or any of its parts, is a mere colorable or formal alteration of the other. If a patentee has invented a combination of two or more old things so as to produce a new and useful result, then he has a right to treat as infringers all who have used his invention in order to accomplish something more or better,

when without the aid of such invention it could not be effected.

According to the view which the court takes of the evidence, Bachelder & Thompson first successfully combined the two systems of brakes with each other and with the windlasses, so that all the brakes could be applied at either end of the car. This was their invention, secured by letters patent to Tanner. No one else had the right to take what may be termed the inventive principle of this combination, use it and evolve something different and better by additional devices for which last a patent could be sustained. This we think Stevens did. What he invented he has a right to retain under his patent, but he cannot use the invention of Bachelder & Thompson without the consent of the patentee or his assignee.

The court took this view of the case before, though the question of infringement was not specially pressed on the former argument, and the court, though it may be admitted it is a point of some nicety, has seen no reason to change its opinion.

It may be that the invention of Bachelder & Thompson, without the improvement of Stevens superadded, may not be of very great value, but that question is not now before us for decision. That will be considered when the proofs upon that point are taken and reported to the court.

Decree accordingly and reference to a master.

At the coming in of the master's report. July 31, 1873, assessing the damages as against the Chicago and Northwestern R. R. Co., at $63,-638.40, the defendant filed 13 exceptions, which are now (November, 1873,) on hearing before Judge Drummond. This case is a test case, nearly all the railroads in the country being directly or indirectly interested in it. [A decree for the whole amount was rendered in that case (unreported). On further rehearing, in September, 1875, the decree was reduced from $63.638.40 to $47,725 (case unreported.) From that decree an appeal was taken to the supreme court. where the decree of the circuit court was reversed, and the cause remanded, with directions to enter a decree dismissing the bill of complaint. 97 U. S. 554.]